# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF IOWA

In the Matter of:

Anthony J. Flynn                                    Case No.  10-04903-als7

                Debtor                                    Chapter 7

First Central State Bank                            Adv. Pro. 11-30005-als

                Plaintiff

    v.

Anthony J. Flynn

                Defendant

**MEMORANDUM OF DECISION**
**(date entered on docket: April 13, 2012)**

<u>COURSE OF PROCEEDING</u>

The matter before the Court arises from First Central State Bank's ("Plaintiff" or "Bank") complaint seeking to have a debt owing to it declared non-dischargeable pursuant to 11 U.S.C. section 523(a)(6).  Tara A. Moffit appeared on behalf of the Bank.  Matthew D. Hatch represented Anthony L. Flynn ("Defendant" or "Flynn").  Trial was conducted on December 15, 2011 and the matter was deemed fully submitted upon the filing of the parties' post trial briefs. The court has jurisdiction of these matters pursuant to 28 U.S.C. sections 157(b)(1) and 1334. The following findings of fact and conclusions of law are entered by the Court pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.  For the reasons set forth herein, the obligation owing to the Bank from the Defendant is discharged.

FACTS

Prior to the bankruptcy filing, Flynn was a fifty-percent shareholder in Marchant & Flynn Enterprises, Inc. ("Company") that operated Rudy's Tacos, a restaurant located in DeWitt, Iowa. On December 13, 2007, the Company executed a note in favor of First Central State Bank for $25,000.00 and granted the Bank a security interest in all the Company's assets. The Defendant executed an unconditional guaranty related to this obligation. Conflicts between Jason Marchant ("Marchant"), the Company's other one-half owner, and Flynn began to develop over various issues involving the restaurant, including its management, profitability and the amount of time and attention it required. Marchant had discussed entering into a new lease with the landlord that would not include the Defendant. He also made statements to third parties that the Defendant was no longer going to be involved in the restaurant.

On December 4, 2009, Marchant and Flynn exchanged words, and there was concern that their dispute was escalating toward a physical altercation. On that date, Flynn took money from the cash register, wait staff tips and alcohol from the business premises. The DeWitt police department was notified on December 5, 2009 that overnight numerous items had been removed from Rudy's Tacos, including, among other miscellaneous items, televisions, a cash register, a security system, satellite system devices, tables, chairs and food inventory. There was no sign of forced entry and the police were informed that the complainant(s) believed that Flynn entered the building and removed the items. According to police records, the incident was treated as a civil dispute based upon the business relationship of the individuals involved and the lack of evidence of any forced entry. Flynn was contacted and informed that failure to return the funds to the waitress could result in a theft charge.

A series of events then followed to address the problems faced by Rudy's Tacos related to the missing assets. Marchant contacted the insurance agent to make a claim under a policy that the Defendant had in effect for the equipment. In order to continue operations, Marchant began replacing some necessary items. A listing was provided at trial that contains valuations for these purchases, and also includes amounts of other losses based upon estimated replacement costs. No information was provided which would indicate the value of the property that was actually removed from the restaurant. The Defendant is adamant that he did not take all of the equipment that is included on the Bank's inventory. He does admit that he removed cash in order to pay the restaurant's ongoing bills and that liquor was removed because of issues involving the validity of the restaurant's liquor license.

On February 22, 2010, the Bank sued the Defendant in the Iowa District Court for Clinton County alleging conversion. The Bank claims that on December 4, 2009, the Defendant removed various items from the restaurant without giving adequate consideration to the Company or to the Bank, which held a security interest in those items. Just prior to trial, Flynn signed and filed a Verified Statement Confessing Judgment ("Confession of Judgment") in the pending state court proceeding, and judgment was entered in conformance with that statement in the amount of $10,500 plus statutory interest and costs.

The Bank timely filed an adversary proceeding on January 24, 2011 claiming that the state court judgment is excepted from discharge based upon willful and malicious injury by the debtor to another entity or to the property of another entity as provided for at 11 U.S.C. section 523(a)(6) (2011). The Defendant disputes the allegations and argues that his Confession of Judgment is not dispositive of his conduct or the actual amount of the Bank's claim.

DISCUSSION

I.     Collateral Estoppel

A necessary and initial inquiry in this case is whether the Defendant's Confession of Judgment gives rise to the application of issue preclusion or collateral estoppel to the parties' dispute in this adversary proceeding. When a court has already "decided an issue of fact or law necessary to its judgment, the same issue cannot be relitigated in later proceedings." Winnebago Indus., Inc. v. Haverly, 727 N.W.2d 567, 571-72 (Iowa 2006). Federal courts apply the law of the forum under which the prior judgment was entered when determining whether collateral estoppel arises from a prior state court judgment. Osborne v. Stage (In re Stage), 321 B.R. 486, 492 (B.A.P. 8th Cir. 2005). Under Iowa law, the doctrine of collateral estoppel prevents relitigation if:

> (1) the issue determined in the prior action is identical to the present issue;
> (2) the issue was raised and litigated in the prior action;
> (3) the issue was material and relevant to the disposition in the prior action; and
> (4) the determination made of the issue in the prior action was necessary and essential to that resulting judgment.

Haverly, 727 N.W.2d at 572. The principle of collateral estoppel applies in bankruptcy dischargeability proceedings. See Hobson Mould Works, Inc. v. Madsen (In re Madsen), 195 F.3d 988, 989 (8th Cir. 1999).

The element most relevant to the Bank's reliance upon the Confession of Judgment, is whether the issue of willful and malicious injury resulting from the Defendant's conduct was actually raised and litigated in the state court conversion proceeding. The purpose of this litigation requirement is to ensure that there is "adequate exploration of the issues" so the previous determination is one that is reliable. See Ideal Mut. Ins. Co. v. Winker, 319 N.W.2d

289, 292 (Iowa 1982). Judgments by confession may violate this principle because defendants often agree to this process for reasons based upon something other than the merits of the case. See Restatement (Second) of Judgments § 27 cmt. e (1982).

The content of a confession of judgment is critical; the more detailed the confession of judgment, the more likely that it will meet the actually litigated standard. A consent judgment was found to have been actually litigated when it contained "detailed factual findings that [were] directly relevant to the legal issues presented" and a "clause indicating that the judgment was intended to be a final adjudication of certain issues." Halpern v. First Ga. Bank (In re Halpern), 810 F.2d 1061, 1065-66 (11th Cir. 1987). Similarly, the actually litigated standard can be met when a confession of judgment contains a statement by the debtor that the debt arose from an intentionally-inflicted, willful and malicious injury and contains an agreement that a bankruptcy discharge will not be sought for the obligations. Solar Sys. & Peripherals, Inc. v. Burress (In re Burress), 245 B.R. 871, 881882 (Bankr. D. Colo. 2000). By way of further illustration, a stipulation of settlement containing no conclusions of law and no findings of fact does not meet the "actually litigated" requirement. See Baillie Lumber Co., L.P. v. Stith (In re Stith Farms), No. 07-62318, Adv. No. 07-80007, 2008 Bankr. LEXIS 961, at *15-16 (Bankr. N.D.N.Y. Mar. 27, 2008). Confessions of judgment that contain only bare legal conclusions and no detailed factual findings, will typically not be given preclusive effect. See Cromer Farms, Inc. v. Ty Ty Peanut Co. (In re Cromer Farms, Inc.), No. 99-10321-JTL, Adv. No. 99-1015-JTL, 2000 Bankr. LEXIS 2002, at *12-14 (Bankr. M.D. Ga. July 18, 2000).

The document and judgment filed in the state court action contains the following language:

> [S]aid indebtedness [owing by Defendant] is based on allegations raised in the above captioned matter related to the

> conveyance, transfer and/or assignment of certain items of property in which [Bank] had a perfected security interest which was compromised due to the conveyance, transfer and/or assignment of such items. Judgment is hereby confessed by Defendant Flynn in the principal amount of $10,500 plus statutory interest at the rate of 2.29% from February 22, 2010 and costs.

The Bank asserts that the Confession of Judgment was entered into on the eve of trial, with input from the Defendant's attorney, and that these facts evidence an admission by Flynn that is binding in this adversary proceeding. Standing alone, these circumstances suggest nothing more than that the parties avoided the time and expense of trial. Flynn testified that he was concerned that if he entered into the Confession of Judgment with the Bank that he would be admitting his guilt, which he denied, and it would be problematic for him in the future. He further states that his attorney explained that because he was going to file bankruptcy, the entry of the judgment would not matter, and "it would just go away." Apparently, based upon this representation, the Defendant executed the Confession of Judgment. No evidence was presented that discounts Flynn's understanding of the events surrounding, or the basis for, the entry of the judgment in state court.

The statutory elements required to prove conversion under state law are not the same as the elements required under the Bankruptcy Code to prove willful and malicious conduct pursuant to 11 U.S.C. section 523(a)(6). The elements of conversion are: 1) ownership by the plaintiff or other possessory right in the plaintiff greater than that of the defendant; 2) exercise of dominion or control over chattels by defendant inconsistent with, and in derogation of, plaintiff's possessory rights thereto; and 3) damage to the plaintiff." See Bearbower v. Bearbower (In re Estate of Bearbower), 426 N.W.2d 392, 394 n.1 (Iowa 1988) (citations omitted). This calls into question whether any determination made related to the state law conversion claim satisfies the

first element of issue preclusion, which requires that the issues be identical.  See Haverly, 727 N.W.2d at 572.  Although the Confession of Judgment states that the Defendant conveyed, transferred and/or assigned certain items in which the Bank had a security interest, it does not state that he did so to intentionally injure the bank.  As discussed in more detail at Section II, the elements of conversion that are the subject of the Confession of Judgment do not require a finding or admission that the Defendant acted willfully or maliciously.

The Iowa Supreme Court has concluded that judgment by confession does not meet the actually raised and litigated test of issue preclusion.  Hoth v. Iowa Mut. Ins. Co., 577 N.W.2d 390, 392 (Iowa 1998).   The Plaintiff contends that Hoth is inapplicable because it is factually distinct from the Defendant's situation and because the Hoth court said that under claim preclusion, the confession of judgment would be binding between the parties.  This argument is not persuasive.  In reaching its conclusion, the Bank disregards the fact that the court was referring to claim preclusion in that specific sentence, and claim preclusion does not apply because the Bankruptcy Court has exclusive jurisdiction over dischargeability actions.  See Brown v. Felson, 442 U.S. 127, 138 (1979).

II.        11 U.S.C. section 523(a)(6)

The Plaintiff relies upon 11 U.S.C. section 523(a)(6) in objecting to the dischargeability of its debt which provides in relevant part:  "[a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) (2010).  The Bank bears the burden of proving the two distinct elements identified in the statute by a preponderance of the evidence.  See Fischer v. Scarborough (In re Scarborough), 171 F.3d 638, 641 (8th Cir. 1999).  Dischargeability actions are narrowly construed against the creditor and in

favor of the debtor in order to promote the principle of a "fresh start."  See Owens v. Miller (In re Miller), 276 F.3d 424 (8th Cir. 2002).  "If an objecting plaintiff fails to establish every element under section 523(a), the indebtedness at issue is dischargeable."  Crop Production Services, Inc. v. Grabanski (In re Grabanski), No. 10-30902, Adv. No. 10-7033, 2011 WL 3651339, at *4 (Bankr. D.N.D. Aug. 18, 2011) (citing Grogan v. Garner, 498 U.S. 279, 286 (1991); Simek v. Erdman (In re Erdman), 236 B.R. 904, 910 (Bankr. D.N.D. 1999)).

"Willfulness is defined as 'headstrong and knowing' conduct and 'malicious' as conduct 'targeted at the creditor . . . at least in the sense that the conduct is certain or almost certain to cause . . . harm.'"  In re Scarborough, 171 F.3d at 641 (quoting Johnson v. Miera (In re Miera), 926 F.2d 741, 743-33 (8th Cir. 1991)).  To be non-dischargeable, the injury from which the debt resulted must be "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."  Sells v. Porter (In re Porter), 539 F.3d 889, 894 (8th Cir. 2008).  Injury that occurs due to merely reckless or negligent conduct does not meet the standard required under 11 U.S.C. section 523(a)(6).  Kawaauhau v. Geiger, 523 U.S. 57, 64 (1998).  This element has been characterized by the Eighth Circuit as subjective, and requiring "proof that the debtor desired to bring about the injury or was, in fact, substantially certain that his conduct would result in the injury that occurred."  Blocker v. Patch (In re Patch), 526 F.3d 1176, 1180-81 (8th Cir. 2008).  Awareness that conduct will result in harm is all that is necessary; specific intent to bring about a particular consequence is not required to prove willfulness.  See id. at 1180.

The facts establish that the Defendant's actions involving at least some of the assets of Rudy's Tacos, and the Bank's collateral, were intentional and deliberate, which satisfies the element of willfulness under 11 U.S.C. section 523(a)(6).

The remaining issue to be decided arises under the second element required under the statute. To qualify as malicious behavior for purposes of the statute, there must be actions that are more than reckless or intentional acts that result in harm. See Fischer v. Scarborough (In re Scarborough), 171 F.3d 638, 641 (8th Cir. 1999). "Malice requires conduct more culpable than that which is in reckless disregard of the creditor's *economic interests and expectancies.* Crop Production Services, Inc. v. Grabanski (In re Grabanski), No. 10-30902, Adv. No. 10-7033, 2011 WL 3651339, at *7 (Bankr. D.N.D. Aug. 18, 2011) (citing Porter v. Porter (In re Porter), 375 B.R. 822, 827 (BAP 8th Cir. 2007)) (emphasis added). "A malicious injury is one resulting from conduct 'targeted at the creditor ... at least in the sense that the conduct is certain or almost certain to cause financial harm.'" Reshetar Sys. v. Thompson (In re Thompson), 458 B.R. 504, 510 (B.A.P. 8th Cir. 2011) (quoting American/Business Credit, Inc. v. Long (In re Long), 774 F.2d 875, 881 (8th Cir. 1985)); see also Van Dalele Bros., Inc. v. Thoms (In re Thoms), 460 B.R. 749, 752-53 (citing Madsen v. Lease (In re Madsen), 195 F.3d 988, 989 (8th Cir. 1999)).

In defending his actions, Flynn states he was going to use the funds from the cash register to pay the business' bills. No evidence contradicts his intent for such use of these funds. Defendant states that his purpose in removing the liquor was to avoid liability for any sales in violation of the state licensing laws. Although the timing of when the liquor was removed was questioned, his purpose for that action was not disputed. As previously indicated, the Defendant denies the removal of any of the other enumerated items from the restaurant. The following relevant excerpt is from the notes that are part of the insurer's records[1]:

> Jason [Marchant] did admit that the back door lock is pretty flimsy and could probably be gotten into. Also several other employees that had been supervisors at the restaurant and also no longer worked there had keys that were never returned. Insured never changed the locks. . . . First Central State Bank is the Mortgage on the business and have gone

---

[1] Court Exhibit 1, Deposition Testimony of Vincent Sheridan, Exhibit 1.

> after Tony Flynn for the items taken from the business . . . If Tony did
> not take the items and someone else did Jason would like to pursue this
> theft claim.

The items were never recovered, and no criminal charges were brought against Flynn, or any other individual for the alleged burglary.

Other than the testimony and documentation from law enforcement, much of the evidence presented in support of the Bank's case is ambiguous. Vincent Sheridan, the Company's insurance agent, states that the Defendant admitted taking the items from Rudy's Tacos. During Mr. Sheridan's deposition, he stated that Flynn had called him to cancel the policy and at that time he was informed that the Defendant "had taken the product." Sheridan's perception and description of the events leaves room for interpretation. Use of the term "product" connotes a type of inventory, not equipment. Flynn admits that he removed liquor which could reasonably be characterized as "product." Scott Jansen, a commercial loan officer with the Bank, states he was informed by Marchant that Flynn removed the items from the restaurant. He also recalls having a telephone conversation with the Defendant in which he suggested that the items be returned, and the Defendant "did not deny" taking the items. It is not clear whether Jansen's belief that the Defendant took the items actually stems from the loan officer's conversation with Marchant or the Defendant. Flynn's testimony, both at trial and during a pre-trial deposition, is belligerent and insolent. What is clear from the evidence is that the relationship between all of the parties is acrimonious.

The requisite level of proof on the element of malice is lacking in this case. There is no doubt that the Defendant's action caused harm, but it does not meet the statutory standard. The record establishes only that the Defendant's action were based upon a reckless disregard for the

property rights of the restaurant, his business associate, and the economic interests or expectancies of the Bank. For the reasons stated herein,

IT IS HEREBY ORDERED:

1. The obligation owing to the Plaintiff under the Confession of Judgment is discharged.

2. Plaintiff's complaint is dismissed.

3. The parties shall bear their own costs.


/s/ Anita L. Shodeen
Anita L. Shodeen
U.S. Bankruptcy Judge


Parties receiving this Memorandum of Decision from the Clerk of Court:
Electronic Filers in this Adversary Proceeding